# FOR PUBLICATION

**FILED & ENTERED**

**JUN 13 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** cargill    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>Efren Diaz Estrada<br><br>**Debtor(s)**. | Case No.: 6:16-17769-MH<br><br>Chapter 7<br><br>**ORDER GRANTING MOTION TO VACATE DISCHARGE**<br><br>**Hearing Date:**<br><br>Date:    June 7, 2017<br>Time:    11:00 a.m.<br>Ctrm:    303 |

### BACKGROUND:

On August 30, 2016, Efren Estrada ("Debtor") filed a Chapter 7 voluntary petition. On Schedule A, Debtor listed certain real property located in Ontario, California (the "Property"), in which Debtor asserted an interest as joint tenant. Debtor estimated the value of the Property to be $385,000. On Schedule C, Debtor claimed an exemption in the Property in the amount of $100,000 and, on Schedule D, Debtor listed Seterus as having a security interest in the Property valued at $207,757. Therefore, the

- 1 -

information identified in Debtor's schedules suggested that there was $77,243 in equity in the property above Debtor's exemption.

On November 30, 2016, Trustee filed an application to employ general counsel, which was granted by order on December 21, 2016. The application identified the potential sale of the Property as the primary justification for the employment of counsel. On December 12, 2016, Debtor received a discharge. Between January 17, 2017, and March 14, 2017, Debtor filed four substitutions of attorney. On February 21, 2017, the deadline for filing claims expired with no proofs of claim having been filed against the estate. Seven days later, Trustee filed six unsecured proofs of claim totaling $21,459.

On March 14, 2017, Debtor filed a motion to convert to Chapter 13. In connection therewith, on March 16, 2017, Debtor amended Schedules I & J, increasing monthly disposable income from $0 to $493. The increase was primarily attributable to a $900 monthly increase in family contributions, from $350 to $1250. On March 22, 2017, Trustee filed opposition to Debtor's motion to convert. Debtor filed a reply on March 29, 2017, indicating that he was willing and able to pay a 100 percent plan, and would consent to a conversion order containing a condition that dismissal of the case would be prohibited absent notice to the Chapter 7 Trustee and a hearing on the matter.

At a hearing on Debtor's motion to convert, the Court informed Debtor that it had recently held in *In re Santos*, 561 B.R. 825 (Bankr. C.D. Cal. 2017), that a post-discharge conversion to Chapter 13 was generally inappropriate. Debtor indicated that he would file a motion to vacate discharge, and the Court continued the matter.

On April 26, 2017, Debtor filed a motion to vacate discharge. On May 3, 2017, Trustee filed his opposition to the motion. On May 25, 2017, Debtor filed a reply, and a hearing on Debtor's motion to vacate discharge was held on June 7, 2017.

## LEGAL ANALYSIS

Debtor has relied upon FED. R. CIV. P. Rule 60(b). Rule 60(b), made applicable to bankruptcy proceedings by FED. R. BANKR. P. Rule 9024, states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;
> (6) any other reason that justifies relief.

Debtor cites *In re Starling* for the proposition that Rule 60(b) can be utilized by a debtor to vacate a discharge. 359 B.R. 901 (Bankr. N.D. Ill. 2007). *See also In re Mosby*, 244 B.R. 79, 90 (Bankr. E.D. Va. 2000) ("The Court concurs with the reasoning in *Cisneros* and *Jones* and concludes that relief in the form of an order vacating a chapter 7 discharge may potentially be granted on motion of a debtor under Rule 60(b), FED. R. CIV. P., as incorporated by FED. R. BANKR. P. 9024."); *In re Hauswirth*, 242 B.R. 95, 97 (Bankr. N.D. Ga. 1999) ("Debtor's conversion to Chapter 13 before the Chapter 7 Trustee has completed the administration of the estate but after the discharge order is entered thwarts the proper operation of the Code, as it interrupts the complete administration intended by Congress. Pursuant to Bankruptcy Rule 9024, which incorporates FRCP 60, or, alternatively, pursuant to this court's authority under 11 U.S.C. § 105, the inconsistency of allowing a debtor two discharges in one case may be avoided by vacating a debtor's Chapter 7 discharge.").

While *In re Starling* concluded that the existence of § 727(d) does not foreclose the ability to vacate a discharge pursuant to Rule 60(b), other courts have held to the contrary. *Compare* 359 B.R. at 913 *with In re Markovich*, 207 B.R. 909, 913 (B.A.P. 9th Cir. 1997) ("We agree with the bankruptcy court that it did not have the inherent equitable power to revoke a discharge outside the framework of § 727(d). The equity power of the bankruptcy court cannot be used to override specific statutory provisions in the Code."). Therefore, this Court must determine: (1) whether it is legally permissible for a debtor to utilize Rule 60(b) to vacate a discharge; and, if it is permissible, (2) whether the facts of this case warrant granting Debtor's motion to vacate discharge.

## I.    *Application of Rule 60(b) to Discharge*

### A.  Case Law Standard

As noted above, *Markovich* and *Starling* represent conflicting conclusions regarding whether § 727(d) precludes the application of FED. R. CIV. P. Rule 60(b) to discharge orders. *Markovich*, in concluding that § 727(d) precluded application of Rule 60(b) to discharge orders, summarily stated, after citing conflicting decisions, that: "[t]he equity powers of the bankruptcy court cannot be used to override specific statutory provisions in the Code." 207 B.R. 909, 913 (B.A.P. 9th Cir. 1997). In the absence of more extensive legal analysis, the Court finds this assertion unpersuasive. Furthermore, contextually, the *Markovich* court believed that Debtor's request to vacate discharge was unnecessary,[1] an important consideration in interpreting the *Markovich's* decision to summarily affirm the bankruptcy court.

*In re Starling*, however, meticulously analyzes the same issues that the Court is confronted with here. First, *Starling* noted that the decision in *Disch v. Rasmussen*, 417 F.3d 769 (7th Cir. 2005), precluded the court from relying on § 105(a) to allow the debtor to vacate its discharge. 359 B.R. at 913. Nevertheless,

---

[1] The footnote implies that the *Markovich* court was under the impression that a debtor could retain its discharge and convert the case nevertheless. That proposition was rejected by this Court in light of the supervening *Marrama* decision in *In re Santos*. 561 B.R. 825 (Bankr. C.D. Cal. 2017).

the *Disch* court noted that it was legally permissible for a discharge order to be vacated through the use of FED. R. CIV. P. Rule 60:

> Final bankruptcy orders can be set aside under Bankruptcy Rule 9024, *see In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988), and nothing in the rule indicates that it does not apply to the revocation of discharges.

417 F.3d at 778. *Starling* adopted the reasoning in *Disch*, stating: "based on the Seventh Circuit's decision in *Rasmussen*, it is within discretion here to vacate the order of discharge based on one of the reasons listed in Rule 60(b) FED. R. CIV. P., should any be applicable." 359 B.R. at 913.

Notably, as identified in *Disch*, the Ninth Circuit Court of Appeals has noted that Rule 60(b) could be used to vacate a discharge in a Chapter 13 case. *In re Cisneros*, 994 F.2d 1462, 1466 (9th Cir. 1993) ("Section 1328(e) therefore does not conflict with Rule 9024 as applied by the bankruptcy court. . . . The bankruptcy court and the BAP therefore properly rejected the Debtors' argument that section 1328(e) serves to limit the power conferred upon the court by Rule 60(b) through Bankruptcy Rule 9024.").[2] Trustee has not made an attempt to distinguish the discharge revocation provision in Chapter 13 from the discharge revocation provision in Chapter 7, but instead cites a case from the United States Bankruptcy Court, Eastern District of Pennsylvania, *In re Nader*, 1998 Bankr. LEXIS 1381 at *13-14 (Bankr. E.D. Pa. 1998), which limited the scope of *Cisneros* based on a Third Circuit Court of Appeals decision, *In re Fesq*, 153 F.3d 113 (3rd Cir. 1998). *Cisneros* is binding authority, however, and the Court has not been presented with a compelling argument why the reasoning of *Cisneros* is limited to the Chapter 13 context.

---

[2] The Court notes that the *Cisneros* opinion is not cited in *Markovich* and its reasoning appears inconsistent with the *Markovich* decision absent a compelling justification for treating Chapter 7 and 13 cases differently.

### B. Relationship Between FED. R. CIV. P. Rule 60(b) and 11 U.S.C. § 727(d)

The tension between the *Markovich* and *Starling* decisions rests in their conflicting interpretations of whether the statutory interpretation doctrine of *expressio unius est exclusio alterius* necessitates a conclusion that the operation of § 727(d) results in field pre-emption. More specifically, the reasoning illustrated by *Markovich* stands for the proposition that because Congress detailed procedures for the revocation of discharge in § 727(d), it is improper for a bankruptcy court to interpret the FEDERAL RULES OF CIVIL PROCEDURE as containing additional grounds for the revocation of discharge, because they do not create or abridge substantive rights. *See generally* 207 B.R. at 913.

On the other hand, as discussed above, *Starling* interpreted the scope of § 727(d) more narrowly, concluding that while the statute provides the mechanism by which a trustee, a creditor, or the United States Trustee may obtain a revocation of discharge, it does not govern or limit attempts by a debtor to revoke his or her own discharge. 359 B.R. at 914. *Starling* did note that the mechanism for revocation of discharge in the Bankruptcy Act of 1898 (11 U.S.C. § 33) explicitly included any party in interest, and that the phrase "any other party in interest" was deleted in the drafting of the Bankruptcy Code. *Id*. The removal of that phrase is not conclusive, however, because it could either be interpreted as implying a Congressional intent to eliminate the ability of a debtor to seek revocation of a discharge, or as simply implying that Congress no longer intended for that provision to apply to debtors.

The Court concludes that it is implausible to assert that § 727(d) is literally the only mechanism by which a discharge can be revoked. For instance, if the granting of a discharge was a clerical error, the Court could revoke the discharge pursuant to FED. R. CIV. P. Rule 60(a). *See, e.g.*, *In re Ali*, 219 B.R. 653, 655 (Bankr. E.D.N.Y. 1998). Therefore, it is not accurate to assert that § 727(d) governs the entire universe of discharge revocation. Instead, it is a question of scope, i.e., to what degree can mechanism(s)

other than 727(d) can vacate or revoke a discharge. Without endeavoring to determine all such mechanisms, as discussed below, a Rule 60(b) motion brought by a debtor appears to be one such alternative.

The Court notes that there is a simple and logical reason that a debtor is not among the parties identified as having express standing to pursue a revocation of discharge pursuant to § 727(d); all of the enumerated grounds for such a request pertain to bad acts of the debtor. Indeed, § 727(d) appears, on its face, intended to punish debtors who act in bad faith or fail to fulfill statutory duties. Clearly, implicit in the statute is an assumption that the provision will be utilized in cases where the debtor wishes to retain his discharge.

This situation is categorically distinct from the type of situation contemplated by § 727(d) in two important respects: (1) the debtor does not wish to retain his discharge; and (2) the debtor has not committed a bad faith act. These two distinctions reflect a fundamentally different situation. And while § 727(d) serves a coercive function, encouraging compliance with statutory duties, Rule 60(b) serves a corrective function, ensuring that justice is equitably administered. Because § 727(d) serves a fundamentally different purpose and is applicable in fundamentally different situations, the Court concludes that, in accordance with *Disch* and *Starling*, § 727(d) does not preclude a debtor's use of Rule 60(b) to revoke a discharge.

Moreover, this conclusion does not violate the canon of *expressio unius est exclusio alterius* because, as noted by *Starling*, the Supreme Court has stated:

> [a]s we have held repeatedly, the canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an

"associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). In the context of § 727(d), a debtor is not part of the same "associated group or series," as the expressed parties – when § 727(d) is invoked, the debtor's interests and goals are typically diametrically opposed to the interests of the party bringing the motion. *See generally* 359 B.R. at 915 ("Moreover, one cannot reasonably argue that a debtor falls within the 'associated group or series' listed in the statute in order to apply the *Expressio Unius* doctrine. The interests of a Chapter 7 debtor are not identical or even remotely similar to those of a trustee, creditors or the United States trustee."). It simply bends logic to make a substantive legal inference that § 727 bars a debtor's request because a debtor is not among the parties identified as having standing to bring a § 727(d) motion since a § 727(d) motion is designed to punish or coerce a debtor.

Certainly, strong policy considerations exist to ensure that debtors are free from any harassment or pressure to vacate a discharge. To find otherwise and to allow a debtor to vacate his discharge without close scrutiny would undermine the bedrock principle of a debtor's fresh start. As discussed below, the circumstances of this case do not implicate such concerns.

## II.    Application of Rule 60(b) to Facts of Case

Debtor argues that Rule 60(b)(1), (5), and (6) justify vacation of discharge in this case. Rule 60(b)(1) provides four disjunctive grounds for relief: (1) mistake; (2) inadvertence; (3) surprise; and (4) excusable neglect. In referring to the rule, Debtor mentions excusable neglect and surprise, although Debtor does not provide legal standards for either. In discussing Rule 60(b)(5), Debtor has identified the final provision, "or applying it [the judgment] prospectively is no longer equitable," but, again, there is no legal analysis. Factually, Debtor makes two arguments that he believes could support granting the

motion in accordance with at least one of the legal provisions: (1) ineffective assistance of counsel; and (2) a belief that the post-discharge conversion was allowed. Ultimately, both Debtor and Trustee have focused primarily on briefing the issues presented in section I, *supra*, and the less so on application of FED. R. CIV. P. Rule 60(b) to the facts of this case.

*A. Ineffective Assistance of Counsel*

Courts disagree about whether, and in what circumstances, attorney error justifies relief under Fed. R. Civ. P. 60(b). Judge Easterbrook has held that attorney negligence is never an acceptable basis for relief under the rule. *See U.S. v. 7108 West Grand Ave., Chicago, Ill.*, 15 F.3d 632, 633-35 (7th Cir. 1994) ("Yet why should the label 'gross' make a difference to the underlying principle: that the errors and misconduct of an agent redound to the detriment of the principal rather than of the adversary in litigation?"). The Ninth Circuit has disagreed, holding that in cases of "gross negligence" relief is warranted under Fed. R. Civ. P. 60(b). *Cmty Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) ("While the above principles provide the general rule regarding the client-attorney relationship, several circuits have distinguished a client's accountability for his counsel's neglectful or negligent acts – too often a normal part of representation – and his responsibility for the more unusual circumstance of his attorney's extreme negligence or egregious conduct."). Furthermore, the Ninth Circuit has found ordinary carelessness to be grounds for relief when there exists an extraordinary or unusual extrinsic cause.[3] *See, e.g.*, *Medina v. Wells Fargo Bank, N.A.*, 2016 WL 2944295 at *2 (C.D. Cal. 2016) (collecting cases). There is, however, much distance on the spectrum between gross negligence (when an attorney is no longer acting on behalf of a client) and ordinary "carelessness" in which relief under 60(b) will be granted.

Furthermore, courts often distinguish between a deliberate act with unintended consequences and an inadvertent attorney error. *Parks v. Armour Pharms.*, 1995 WL 13232 at *1 (N.D. Cal. 1995) ("This

---

[3] It is questionable whether the situations cited in *Medina* can be properly considered to constitute "carelessness."

case is distinguishable from that in *Nemaizer v. Baker*, 793 F.2d 58 (2nd Cir. 1986), wherein the dismissal with prejudice was based upon a stipulation with defense counsel and an apparent misunderstanding by plaintiff of the effect of the stipulation. Here, plaintiffs' counsel and his secretary unilaterally and inadvertently filed a dismissal containing unintended 'with prejudice' language. They did not fail to appreciate the effect of the dismissal with prejudice; they failed to realize what they inadvertently filed.").

The distinction noted in *Parks* is illustrative of the problem here. As *Parks* notes, a party should not be relieved from acts that were deliberatively chosen solely because the party did not comprehend the consequences of the decision. Here, the filing of Debtor's Chapter 7 petition was clearly an intentional act. Additionally, there is no indication that the alleged attorney negligence reaches the level of gross negligence which would sever the agent-principal relationship. Finally, there is no indication that there were any acts that would excuse ordinary attorney "carelessness" such as occurred in the cases cited by *Medina*. As such, relief does not appear available to Debtor under Rule 60(b)(1).

### B. Change in Law

While not briefed in-depth, Debtor also seems to suggest that the Court's *Santos* decision constitutes an intervening change in law. [Dkt. 39, p. 6: "The intervening case of *In re Santos*, which expressly limited if not eliminated the Debtor's right to convert after discharge, is a further basis to rule that it is no longer equitable that the discharge order should have prospective effect, because it extremely limited the Debtor's ability to convert to Chapter 13 after receipt of a Chapter 7 discharge."]. *Santos* did not constitute a change in law, but, rather, the case applied the Supreme Court's *Marrama* decision to a motion to convert post-discharge. A trial court simply does not change law.

*C. Miscellaneous: 60(b)(5) & 60(b)(6)*

The final prong of Rule 60(b)(5), a general equitable prong, is not applicable in the present situation because the rule applies to judgments that have prospective application, typically indicated by the potential for continuing supervision. *See generally Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647-48 (1961) ("A balance must thus be struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances."); *Normva v. Elkin*, 849 F.Supp.2d 418, 423-24 (D. Del. 2012) (collecting cases on prospective application). "The standard used in determining whether a judgment has prospective application is whether it is "executory" or involves the supervision of changing conduct or conditions." *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995) (quotation omitted). A discharge is not a prospective judgment.

Finally, Debtor cites FED. R. CIV. P. Rule 60(b)(6), the equitable, catchall provision. "That clause gives the [ ] court power to vacate judgments 'whenever such action is appropriate to accomplish justice." *U.S. v. Sparks*, 685 F.2d 1128, 1130 (9th Cir. 1982) (*quoting Klapprott v. U.S.*, 335 U.S. 601, 615 (1949)). "In order to obtain such relief from a judgment, however, 'extraordinary circumstances' must exist." *Id.* (*quoting Ackerman v. U.S.*, 340 U.S. 193, 199 (1950)). Rule 60(b)(6) is, however, potentially applicable to the case here. *See, e.g.*, *Espinosa v. United Student Aid Fund, Inc.*, 553 F.3d 1193, 1199 (9th Cir. 2008) ("After a judgment (*including a discharge*) is finalized, and the time for appeal has run, the judgment can only be reconsidered in the limited circumstances provided by Rule 60(b).") (emphasis added).

As a preliminary matter, regarding the Rule 60(b)(6) "exceptional" or "extraordinary circumstance" standard, the Court notes that Rule 60(b)(6) must be interpreted in its applicable context. The court in *Santos* stated that: "[T]here is no absolute prohibition on converting a case from Chapter 7 to Chapter 13 post-discharge, but pre-closing; rather there is a § 1307(c) 'for cause' review." 561 B.R. 825, 830

(Bankr. C.D. Cal. 2017). The court noted its belief that a post-discharge conversion appeared to be presumptively an abuse of process. *See generally id.* at 830-31. Nevertheless, as discussed in *Santos*, certain factual situations may be sufficient to rebut the presumption that conversion is an abuse of process. Vacating the discharge, a procedure the debtors did not initiate in *Santos*, along with agreeing to procedures that eliminate or substantially reduce the potential prejudice to any other parties, indicate the absence of abuse of process.

In order to secure conversion in this case, however, Debtor must meet two standards. First, Debtor must satisfy the standard of Rule 60(b)(6) in order to vacate the discharge, then Debtors must overcome the presumption that conversion is an abuse of process. If the former standard is higher than the latter, the result is illogical: there would be a certain subset of cases in which the latter standard would be satisfied, but the Rule 60(b)(6) standard would not be satisfied. For instance, in this situation, assuming, *arguendo*, that Debtor failed to show the necessary extraordinary circumstances, it may be reasonable to conclude that the facts of the case and the conduct of Debtor overcome the presumption that post-discharge conversion would be an abuse of process, and the result would be that Debtor would be allowed to convert, while also retaining his discharge. That result is illogical and untenable.

Therefore, utilizing an interpretation of Rule 60(b)(6)'s "any other reason that justifies relief" that imposes a standard higher than that required to rebut the presumption that conversion is an abuse of process would frustrate the reasoning of *Marrama* as applied to these circumstances, and as thoroughly discussed in *Santos*. *See generally id.* at 829-31. Cognizant of that fact, the Court concludes that the Supreme Court's *Marrama* decision requires the Court to consider the interests of justice when considering a Rule 60(b)(6) motion to revoke a discharge, and that the "extraordinary circumstance" test must be interpreted in light of the reasoning in *Marrama*.

In the case at hand, there are three general factors that, in combination, the Court believes rise to the

level of "extraordinary circumstances" and support a finding that vacating the discharge is necessary to further justice: (1) evidence that Debtor's original counsel gave him inaccurate and incomplete legal advice regarding his choices in bankruptcy, specifically regarding the effect bankruptcy may have on his home; (2) that no creditors have participated in this case, and the only claims filed were filed by the Trustee (after the entry of discharge); and (3) that Debtor has proposed a Chapter 13 plan which will pay creditors 100%.

Thus, the revocation of the discharge, in this case, will not meaningfully impair the rights of any other parties, but, instead will simply fulfill a prerequisite to Debtor's conversion to Chapter 13, thereby facilitating payment in full to creditors. Only the conversion of the case, not the vacation of discharge, may be said to negatively modify the rights of any party in interest. And even then, any impairment would merely be that the creditors for whom Trustee filed a proof of claim will be paid over a longer period of time.

While Trustee has contended that this decision potentially creates a slippery slope, whereby debtors will increasingly seek to frustrate the legitimate efforts of Chapter 7 trustees to liquidate assets of the estate for the benefit of creditors, the Court is convinced that such concern is unfounded. This case represents the rare situation in which (1) no proofs of claim were timely filed; (2) Debtor has established that he has the means to pay all creditors in full, including Trustee's administrative claim for his professional fees; (3) Debtor acted promptly in seeking to convert to Chapter 13, minimizing prejudice to other parties; and (4) Debtor is willing to stipulate that his case will be reconverted to Chapter 7, rather than dismissed, if Debtor fails to complete his plan according to its terms.

Based on the foregoing, the Court is left with the clear impression that revocation of the discharge is required to prevent manifest injustice pursuant to Rule 60(b)(6). Furthermore, the efforts undertaken by Debtor to remedy a situation apparently produced by ineffective legal counsel, namely Debtor's efforts

to vacate his Chapter 7 discharge and propose a plan that pays 100 percent to creditors and minimizes, to the extent possible, any prejudice to other parties, establishes that conversion, after the discharge is vacated, would not be an abuse of process in this case.

In accordance with the above, IT IS HEREBY ORDERED that Debtor's motion is GRANTED and the discharge is VACATED.

###

Date: June 13, 2017

Mark Houle
United States Bankruptcy Judge